DYK, Circuit Judge.
 

 Martha M. Myore (“Myore”) appeals the order of the United States Court of Appeals for Veterans Claims remanding to the Board of Veterans’ Appeals (“the Board”) her claim for dependency and indemnity compensation.
 
 Myore v. Principi,
 
 2001 WL 808269, No. 00-488, slip op. at 4 (Vet.App. July 9, 2001). Because the remand order of the Veterans Court is not an appealable final order, we dismiss the appeal.
 

 BACKGROUND
 

 This case has a long history. The opinions of the Veterans Court in this matter provide a full description of that history.
 
 Myore v. Brown,
 
 9 Vet.App. 498 (1996)
 
 (“Myore I
 
 ”);
 
 Myore v. Principi,
 
 2001 WL 808269, No. 00-488 (Vet.App. July 9, 2001)
 
 (“Myore II
 
 ”). We simply summarize here the relevant facts.
 

 Myore is the widow of deceased veteran Kenneth B. Myore (“the veteran”), who served in the United States Marine Corps from May 1984 until his death on May 26, 1990.
 
 Myore I,
 
 9 Vet.App. at 500. According to the Board’s findings of fact of January 31, 2000, the veteran’s death was the result of a self-inflicted gunshot wound to the head incurred while the veteran was playing “Russian roulette.”
 
 In re Myore,
 
 No. 92-23 224, slip op. at 2 (Bd.Vet.App. Jan. 31, 2000).
 

 In July 1990, Myore filed a claim with the Department of Veterans Affairs (“the DVA”) for dependency and indemnity compensation under 38 U.S.C. § 1310.
 
 Myore I,
 
 9 Vet.App. at 501-02. That statute provides:
 

 When any veteran dies after December 31, 1956, from a service-connected or compensable disability, the Secretary shall pay dependency and indemnity compensation to such veteran’s surviving spouse, children, and parents. The standards and criteria for determining whether or not a disability is service-connected shall be those applicable under chapter 11 of this title.
 

 38 U.S.C. § 1310(a) (2000). Chapter 11 provides the standards for determining whether a disability is service-connected. Relevant to this appeal is 38 U.S.C. § 1110, which requires that “no compensation shall be paid if the disability is a result of the veteran’s own willful misconduct....” 38 U.S.C. § 1110 (2000). In June 1991, the DVA regional office determined that the veteran’s death was not service-connected because it was attributable to the veteran’s own willful misconduct, and denied Myore’s claim.
 
 Myore I,
 
 9 Vet.App. at 501.
 

 In April 1992, Myore appealed the regional office’s decision to the Board.
 
 Id.
 
 at 502. In December 1993, the Board found that the veteran’s death was due to a self-inflicted gunshot wound to the head while playing Russian roulette, and that the veteran was not insane at the time of his death.
 
 Id.
 
 The Board found that the veteran’s death was, therefore, the result of willful misconduct and affirmed the re
 
 *1349
 
 gional office’s denial of disability and indemnity compensation.
 
 Id.
 

 Myore appealed the Board’s decision to the Veterans Court. On October 31, 1996, the court vacated and remanded the Board decision.
 
 Id.
 
 at 500. The court held that the Board decision failed to indicate whether the Board accorded weight to the statutory presumption afforded by 38 U.S.C. § 105(a) that an injury or disease incurred during active military service was incurred in the line of duty, and did not specifically find willful misconduct by a preponderance of the evidence.
 
 Id.
 
 at 503. The court further held that the Board did not base its conclusion of willful misconduct on a specific finding that the veteran engaged in “an act involving conscious wrongdoing or known prohibited action” or in “deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences,” as required by 38 C.F.R. § 3.1(n).
 
 Id.
 

 [1]
 

 The court also held that the Board had failed adequately to consider whether the veteran committed suicide, and if so, whether the veteran was of unsound mind.
 
 Id.
 
 at 504. According to the court, under 38 C.F.R. § 3.302, a finding of unsound mind would have negated the finding of willful misconduct.
 
 Id.
 
 Finally, the court held that pursuant to the government’s statutory duty to assist, on remand the Board “must seek to obtain” two documents that Myore had requested from the government.
 
 Id.
 
 at 506-07.
 

 On remand, the Board specifically found that “[t]he veteran died as the result of a self-inflicted gunshot wound to the head while he was playing Russian roulette,” and that “[t]he veteran’s death was not the result of suicide.”
 
 In re Myore,
 
 No 92-23 224, slip op. at 2. The Board concluded that the veteran’s actions constituted willful misconduct under 38 C.F.R. § 3.1(n), and, therefore, the veteran’s death was not service-connected.
 
 Id.
 
 at 8. Consequently, the Board denied Myore’s claim for dependency and indemnity compensation.
 

 Once again, Myore appealed to the Veterans Court. Myore urged reversal of the Board decision, arguing that 38 U.S.C. § 1310(a) does not require that a surviving family member be denied dependency and indemnity compensation as a result of the deceased veteran’s willful misconduct.
 
 Myore II,
 
 slip op. at 2. In the alternative, Myore argued that a second remand was required, because the Board failed to follow the court’s previous instructions on remand, and because the government failed to fulfill its duty to assist in the development of Myore’s claim. Id at 1. In response, the government asked that the Board decision be vacated and remanded to the Board for readjudication in light of the enactment of the Veterans Claims Assistance Act of 2000, Pub.L. No. 106-475, 114 Stat.2096 (2000) OVCAA”), which amended 38 U.S.C. § 5103 (entitled “Notice to claimants of required information and evidence”) and added 38 U.S.C.
 
 *1350
 
 § 5103A (entitled “Duty to assist claimants”).
 
 Id.
 

 On July 9, 2001, the court vacated and remanded the Board’s decision of January 81, 2000. The court held that the Board should readjudicate the case in light of the newly enacted VCAA.
 
 Id.
 
 at 2. The court noted that “all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA’s enactment.”
 
 Id.
 
 (quoting
 
 Holliday v. Principi,
 
 14 Vet.App. 280, 286 (2001)). The court therefore held:
 

 [I]n view of “the absence of VA implementing regulations, and ... [in view of] concerns of fundamental fairness and fair process, the Court must avoid cutting off an appellant’s rights under the VCAA by prematurely injecting itself into the VA adjudication process and making determinations on issues that were not addressed by VA in the first instance” and that, therefore, “at least at this time ... this Court may not determine in the first instance the applicability of the VCAA” to an appellant’s claims.
 

 Id.
 
 (quoting
 
 Holliday,
 
 14 Vet.App. at 290) (ellipses in original).
 

 Despite vacating and remanding to the Board, the court addressed Myore’s argument that 38 U.S.C. § 1310(a) “cannot be interpreted to deny her [dependency and indemnity compensation] because of misconduct committed by the veteran.”
 
 Id.
 
 at 1. The court held that section 1310(a) provides for benefits only “where the veteran’s death results from a service-connected disability as defined under chapter 11 of [Title 38].”
 
 Id.
 
 at 2. Under 38 U.S.C. § 1110, the court held, service-connection cannot be found where the disability is the result of the veteran’s own willful misconduct.
 
 Id.
 
 The court noted, however, that it “continue[d] to be concerned about whether VA regulations provide an objective standard or principled basis for distinguishing willful misconduct ... from suicide ... in a ‘Russian roulette’ situation.”
 
 Id.
 
 at 3. The court required that on remand the Board issue “a readjudicated decision supported by an adequate statement of reasons or bases.”
 
 Id.
 
 The court refrained from reviewing Myore’s other arguments “in view of the readjudication that will be ordered in light of the enactment of the VCAA.”
 
 Id.
 
 at 20. The court specified that Myore “will be free to raise any such arguments on remand.”
 
 Id.
 
 at 3.
 

 Myore timely appealed the Veterans Court’s interpretation of section 1310(a) to this court.
 

 DISCUSSION
 

 The government contends that this appeal should be dismissed, because Myore has not appealed from a final order. We agree.
 

 The statute granting this court jurisdiction over appeals from the Veterans Court provides:
 

 After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation (other than a refusal to review the schedule of ratings for disabilities adopted under section 1155 of this title) or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision. Such a review shall be obtained by filing a notice of appeal with the Court of Appeals for Veterans Claims within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts.
 

 38 U.S.C. § 7292(a) (2000),
 
 as amended by
 
 Veterans Benefits Act of 2002, Pub.L. No. 107-330, § 402,116 Stat. 2820, 2832 (2002).
 
 *1351
 
 Although this provision does not include an express requirement of finality, “we have ... ‘generally declined to review non-final orders of the Veterans Court.’ ”
 
 Williams v. Principi,
 
 275 F.3d 1361, 1363 (Fed.Cir.
 
 2002)
 
 (quoting
 
 Adams v. Principi, 256
 
 F.3d 1318, 1320 (Fed.Cir.2001)). Of specific relevance to this appeal, “[t]his court typically will not review remand orders by the Court of Appeals for Veterans Claims ‘because they are not final judgments.’ ”
 
 Williams,
 
 275 F.3d at 1364 (quoting
 
 Winn v. Brown,
 
 110 F.3d 56, 57 (Fed.Cir.1997));
 
 see also Adams,
 
 256 F.3d at 1320 (“[R]emand orders from the Veterans Court ordinarily are not appealable because they are not final.”).
 

 In
 
 Williams,
 
 we held that there is a limited exception to the rule that remands are not appealable:
 

 Our cases establish that we will depart from the strict rule of finality when the Court of Appeals for Veterans Claims has remanded for further proceedings only if three conditions are satisfied: (1) there must have been a clear and final decision of a legal issue that (a) is separate from the remand proceedings, (b) will directly govern the remand proceedings or, (c) if reversed by this court, would render the remand proceedings unnecessary; (2) the resolution of the legal issues must adversely affect the party seeking review; and, (3) there must be a substantial risk that the decision would not survive a remand,
 
 i.e.,
 
 that the remand proceeding may moot the issue.
 

 275 F.3d at 1364 (citations omitted).
 

 Myore contends that the Veterans Court misinterpreted 38 U.S.C. §§ 1310(a) and 1110, and that the disposition of this legal issue satisfies the three criteria of
 
 Williams,
 
 rendering the court’s remand order an appealable final decision. Both parties agree that the first two requirements of
 
 Williams
 
 are met. It is not disputed that the court’s interpretation of sections 1310(a) and 1110, as barring indemnity and disability compensation to family members where the veteran’s death was the result of willful misconduct, constitutes a “clear and final decision of a legal issue” that will “adversely affect the party seeking review.” The parties disagree, however, as to whether the remand order satisfies the third criterion,
 
 i.e.,
 
 whether there is “a substantial risk that the decision would not survive a remand.”
 

 We hold that there is not a substantial risk that the Veterans Court’s interpretation of sections 1310(a) and 1110 would evade further review if Myore should lose on remand. This ease is governed by our decision in
 
 Winn.
 
 In
 
 Winn,
 
 the Board denied disability benefits to the veteran based on lack of service connection. 110 F.3d at 57. On appeal to the Veterans Court, the veteran argued that his condition was service-connected and also challenged the validity of a DVA regulation, 38 C.F.R. § 3.303(c), which disallowed service-connection for certain mental disorders.
 
 Id.
 
 The Veterans Court vacated and remanded the Board decision, holding that further evidence was required to determine whether the veteran’s condition was service-connected.
 
 Id.
 
 The court also held, however, that the challenged regulation was valid.
 
 Id.
 
 The veteran appealed to this court, arguing that the Veterans Court’s decision regarding the validity of the regulation was an appealable final decision, because it would be “effectively unreviewable at a later stage of litigation.”
 
 Id.
 
 We rejected that contention and dismissed the appeal. We reasoned:
 

 [I]n this case the Court of Veterans Appeals remanded Mr. Winn’s claim to the [Board] for further fact finding on the merits of his particular disorder. There, Mr. Winn may win or lose on the
 
 *1352
 
 facts of his case without regard to the regulation he now challenges. If he loses, and the regulation is applied against him, and the loss is affirmed by the Court of Veterans Appeals, then Mr. Winn can certainly appeal to this court on what will then be a final judgment. At that time, if the regulation had been relied upon by the Court of Veterans Appeals in reaching its decision, then Mr. Winn may have proper standing to challenge its validity before this court.
 

 Id.
 

 The same reasoning applies to the present case. The Veterans Court vacated and remanded Myore’s claim for readjudication. On remand, Myore may present evidence that the veteran’s death was service-connected and was not the result of willful misconduct. Myore may also pursue her other claims, which the Veterans Court declined to resolve at this stage of the proceeding. As in
 
 Winn,
 
 Myore may win or lose on the facts of her case without regard to the Veterans Court’s interpretation of section 1310(a), which she now challenges. If Myore loses before the Board, and section 1310(a) is applied against her, and the Board’s decision is affirmed by the Veterans Court, then Myore may seek review of that court’s interpretation of section 1310(a) on what will then be a final judgment. The Veterans Court’s interpretation of section 1310(a) will not, therefore, evade further review, and under the criteria identified in
 
 Williams,
 
 Myore has not appealed from a final order.
 

 The appellant argues that if an issue will be important in the proceedings on remand and, if reversed, would result in a decision in the claimant’s favor, the
 
 Williams
 
 test is satisfied. We disagree. The mere fact that the Veterans Court as part of a remand decision may have made an error of law that will govern the remand proceeding — even one that, if reversed, would lead to a decision in favor of the claimant — does not render that decision final. Rather, “there must be a substantial risk that the decision would not survive a remand.”
 
 Williams,
 
 275 F.3d at 1364;
 
 see also Winn,
 
 110 F.3d at 57 (holding that a remand is appealable only “when the remand disposes of an important legal issue that would be effectively unreviewable at a later stage of litigation”);
 
 cf. Cabot Corp. v. United States,
 
 788 F.2d 1539, 1543 (Fed.Cir.1986) (holding that a remand issued by the Court of International Trade is not final and appeal-able solely because it “finally determines the controlling issue in the case” unless it is “effectively unreviewable on appeal from a final judgment”). Hence, regardless of whether the Veterans Court’s interpretation of section 1310(a) will be important on remand, there is no substantial risk that this interpretation will not survive the remand, and the remand is, therefore, not a final appealable order.
 

 The appellant argues that this conclusion is inconsistent with our earlier decisions in
 
 Adams
 
 and
 
 Stevens v. Principi,
 
 289 F.3d 814 (Fed.Cir.2002). We disagree. In those cases, rather than merely alleging legal error within the remand order, the appellants challenged the very authority of the Veterans Court to order a remand. In other words, the veterans claimed a legal right to a decision without a remand. In
 
 Stevens,
 
 “Mr. Stevens’s argument [was] that the remand [had] been ordered for a prohibited purpose, that he [was] entitled to a decision in his favor without the need for a remand, and that his right to relief might be lost after further proceedings on remand.” 289 F.3d at 817. Similarly, in
 
 Adams,
 
 “Mr. Adams’s position, in essence, [was] that it was improper for the Veterans Court to remand the case to the Board. Instead, he contended], the court should have ruled, without a remand, that the DVA offered insufficient evidence to rebut the presumption of sound condition.”
 
 *1353
 
 256 F.3d at 1321. The appellants’ contention in
 
 Adams
 
 and
 
 Stevens
 
 was, therefore, that the Veterans Court lacked the statutory power to remand, under 38 U.S.C. § 7252(a).
 

 In both cases, we held that the question of the authority of the Veterans Court to order a remand might not survive a remand, and, therefore, constituted an appealable final decision. In
 
 Adams,
 
 we held that “in light of the nature of the claim pressed by Mr. Adams it is appropriate for us to review the merits of his appeal.... The question whether Mr. Adams is entitled to a decision without a remand may become moot once the remand proceeding has taken place.”
 
 Id.
 
 at 1321. In both cases, we definitely answered the question of the Veterans Court’s statutory authority to remand. In
 
 Adams,
 
 we held that “[t]he court is authorized by statute to ‘affirm, modify, or reverse a decision of the Board
 
 or to remand the matter, as appropriate.’
 
 ”
 
 Id.
 
 (emphasis in original) (quoting 38 U.S.C. § 7252(a)). In
 
 Stevens,
 
 we held that, once the Veterans Court had concluded that the Board had applied the wrong legal standard, “it was proper for the court to remand Mr. Stevens’s case to the Board.” 289 F.3d at 818. There is no issue here as to the authority of the Veterans Court to remand.
 

 Nor is our decision in
 
 Allen v. Principi,
 
 237 F.3d 1368 (Fed.Cir.2001), to the contrary. In
 
 Allen,
 
 the appellant waived his right to proceed on remand, conceding that he neither could nor would seek to introduce new evidence on the remand that could lead to a favorable decision. 237 F.3d at 1373-74. The appellant’s sole contention was that the Veterans Court had misinterpreted section 1110 as precluding service connection for alcohol abuse either on a secondary service-connection basis or as evidence of an increase in the severity of a service-connected disability.
 
 Id.
 
 at 1371. We held that because the Veterans Court’s statutory interpretation “completely precludes Allen from using his alcohol abuse disability to increase his rating level,” and because “Allen plans to submit no additional evidence relating to any non-alcohol-related PTSD symptoms,” the appellant was entitled to appellate review in this court without exhausting his remand.
 
 Id.
 
 at 1373, 1374. But in
 
 Allen,
 
 we specifically distinguished
 
 Winn,
 
 on the grounds that “[u]nlike Winn ... Allen cannot ‘win’ on remand, because no matter what facts the Board finds on the issue of secondary service-connection, Allen cannot [and would not] rely on his alcohol abuse disability to increase his rating level.”
 
 Id.
 
 at 1373. Under the unique circumstances presented in
 
 Allen,
 
 where the veteran waives the right to a remand, that remand order may be a final appealable order.
 
 [2]
 
 But
 
 Allen
 
 provides no authority for considering a decision to be final where, as here, the appellant intends to participate in the remand proceeding. Where such participation is not foreclosed by a concession, the remand decision is not final. This case is controlled by
 
 Winn.
 

 CONCLUSION
 

 Because Myore has not appealed from a final order, the appeal is
 

 DISMISSED.
 

 
 *1354
 
 COSTS
 

 No costs.
 

 [1]
 

 . The regulation provides as follows:
 

 Willful misconduct means an act involving conscious wrongdoing or known prohibited action. A service department finding that an injury, disease or death was not due to misconduct will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs.
 

 (1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.
 

 (2) Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct.
 

 (3) Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death.
 

 38 C.F.R. § 3.1(n) (2001).
 

 [2]
 

 . Under these rare circumstances, in the future a party wishing to appeal must ask the Veterans Court to enter an adverse final judgment, so that there is no doubt about the finality of the judgment. The Veterans Court may, of course, decline such a request for the entry of a final judgment, because it thinks that further development of the law or the facts is necessary for the court’s review purposes. In that event, there will be no final judgment for purposes of our review.